W. J. SWEENEY ET AL., APPELLANTS, *v.* PETER DARCY AND JOHN ZIMMERMAN, SHERIFF, RESONDENTS.

[Submitted May 18, 1898.   Decided June 7, 1898.]

*Replevin—Jury—Possession,  Undisputed  Evidence of—Instruction—Presumption of  Ownership—Lease.*

1. REPLEVIN.—*Jury.*—In an action of replevin, the defendant sheriff attempted to justify under a writ of execution issued from a justice's court, but did not offer in evidence the judgment; the court instructed the jury to disregard all evidence offered to prove justification, but allowed the jury to take to the jury room and consider the summons, account and execution; to which action of the court the plaintiff objected. *Held*, error.

2. REPLEVIN.—*Possession, Undisputed Evidence of.*—Where it appears without any contradiction that the plaintiff was in possession of the property at the time it was taken by the defendant, it is error not to instruct the jury to that effect.

3. SAME.—The possession of personal property is *prima facie* evidence of ownership.

4. SAME.—*Lease.*—Sheep were leased under two separate leases. The first lease provided that, at the end of the term, the lessees were to return to the lessors the original band and half the increase, and to make good any loss in the original band in excess of 15 per cent. Both leases provided that the title to both bands and the increase should remain in the lessors during the term of the lease and until the sheep were redelivered to the lessors. The lessees having suffered a severe loss in the first band and being in financial difficulties, surrendered to the lessors the band included in the second lease and 58 more than they were entitled to under the terms of the first lease, it being understood that the latter should be kept to make good any loss found to exist in the first band when the final division should be made in accordance with the terms of the lease. *Held*, first, that the title to the sheep remained in the lessors until final division took place. Second, that neither of the lessees could sell the sheep and that the same were not subject to an execution against their property.

*Appeal from District Court, Flathead County; Charles W. Pomeroy, Judge.*

REPLEVIN by W. J. Sweeney and another against Peter Darcy and John Zimmerman, as sheriff, etc. Judgment for defendants, and plaintiffs appeal. Reversed.

Statement of the case by the justice delivering the opinion.

This is an action in replevin, to recover 225 head of sheep alleged to have been taken from the appellants by the respondent Zimmerman, as sheriff of Teton county, and who acted under an execution issued at the instance of his co-respondent in an action which the latter brought in a justice's court against the firm of Graves & Harris. The respondent Darcy filed an answer, denying generally all the allegations of the complaint. Zimmerman's answer admits the taking and attempts to justify under a judgment and execution issued thereon in the action above referred to, and alleges, on information and belief, that the sheep belong to the firm of Graves & Harris. The facts pleaded in justification in Zimmerman's answer were denied by plaintiffs' replication.

The record shows that the sheep in controversy were leased by the appellants to Graves & Harris under two leases—one executed in July, 1894, and the other in October, 1896. Under the lease of July 4, 1894, Graves & Harris were to receive the sheep and to care for them, and redeliver them to the appellants in October, 1896, with one-half the increase less 15 per cent. of the original number; Graves & Harris to have one-half of the increase for the care of the sheep. It was also agreed that, if the loss of the sheep during the lease was greater than 15 per cent., Graves & Harris were to make up 85 per cent. of the original band out of other sheep of the same grade. Under this agreement, the title to the sheep, as well as the title to the increase, was to be and remain in the appellants during all the time of the lease, and until the sheep were redelivered by Graves & Harris. In October, 1895, the appellants leased another band of sheep to Graves & Har-

ris, the lease containing similar provisions as the first one. By the terms of the latter lease, Graves personally bound himself to make good any loss beyond 15 per cent. which might occur under the lease of July, 1894. Before these leases expired, in July, 1896, Graves & Harris were attached by a Great Falls bank; and, by reason of their financial difficulties, Graves & Harris, on the 2d of October, 1896, surrendered to the appellants the band of sheep they had leased in 1895. At the time of this surrender, the appellant received from Graves & Harris 58 head of sheep more than they were entitled to under the lease of 1894; but it appears that it was agreed between the appellants and Graves & Harris that the appellants should retain these 58 head to make good any loss which might be found to exist in the band of sheep leased in 1894, when a final division should be made according to the terms of lease, it being known at the time that Graves & Harris had suffered a very heavy loss of sheep under the lease of 1894. On September 12, 1896, the defendants seized 225 head of the sheep which were turned over by Graves & Harris to the appellants under the leases, and under the facts and circumstances as stated above, the seizure being made under the execution against Graves & Harris, as above referred to.

The case was tried to a jury, and a verdict rendered for the defendants, upon which a judgment was entered; and, from this judgment and an order overruling appellants' motion for a new trial, this appeal is prosecuted.

*J. G. Bair and T. J. Walsh,* for Appellants.

*James Sulgrove, F. McIntire and J. E. Erickson,* for Appellees.

PEMBERTON, C. J.   At the trial of this case, the court instructed the jury to disregard all evidence offered to show justification by the defendant Zimmerman, as sheriff, under the execution issued in the case of Darcy against Graves & Harris, because there was no evidence of any judgment hav-

ing been rendered in that case upon which an execution could have legally issued. The court, notwithstanding this instruction, permitted the jury to take to their room, and consider, in making up their verdict, the summons, account, and execution in the case, over plaintiffs' objection and exception. This was error.

The court refused to give the following instruction at the request of the plaintiffs: "The evidence in this case shows that the plaintiffs, Sweeney & Cowell, were in possession of the property in question at the time the same was taken from them under the alleged execution. This is *prima facie* evidence that the plaintiffs were the owners thereof, and entitled to the possession of the same; and unless the defendants have proven by a preponderance of the evidence that Graves & Harris or Charlie Harris were the owners of or entitled to the possession thereof at the time of such taking, you should find for the plaintiffs."

The court gave an instruction to the same effect, except that the instruction given left it to the jury to say and find whether plaintiffs were in possession of the sheep at the time the sheriff seized them. There is not a particle of controversy in the evidence about this question. The evidence all shows that the sheep were at that time in the possession of the plaintiffs. The officer who made the levy so testifies. Nobody disputes it. There was therefore no question of fact upon this issue to be submitted to and determined by the jury. The instruction requested by plaintiffs should have been given to the jury.

But the main question in the case is as to whether the sheep in question were lawfully in possession of the plaintiffs at the time they were seized by the sheriff. The facts are substantially set out in the statement of the case, and it is useless to repeat them here. It is shown clearly by the testimony of plaintiff Cowell and Mr. Graves, of the firm of Graves & Harris, that the sheep were turned over to the plaintiffs under and in accordance with the terms of the leases referred to in the statement, and that the plaintiffs, under the terms of the

delivery to them of the sheep, were to keep them to make good losses which Graves & Harris were bound to make good to them under the leases of the sheep. There is some pretense that the sheep were the individual property of Harris. This could not be so. Under the lease to Graves & Harris, the title to the sheep was to remain in plaintiffs until final settlement of the sheep contracts in 1896. Harris could get no title to the sheep until then. Harris does not contradict the evidence of Cowell and Graves as to the terms of plaintiffs' possession of the sheep. We are unable to discover any grounds upon which the verdict and judgment can be sustained. Neither Graves & Harris, nor Harris individually, could have taken the sheep from the possession of the plaintiffs under any view disclosed by the facts of the case. If they could not, then their creditors could claim no greater right to do so.

The judgment and order appealed from are reversed, and the cause remanded for new trial.

*Reversed and Remanded.*

HUNT and PIGOTT, JJ., concur.